283 F.2d 127
 127 U.S.P.Q. 227
 George ZAJICEK, Jr., Don r. Zajicek, KoolVent Awnings of
America, Inc., a corporation, KoolVent of
California, Inc., a corporation, and
KoolVent Awnings of Los
Angeles, Inc., a
corporation
Appellants,
v.
KOOLVENT METAL AWNING CORPORATION OF AMERICA, a corporation, Appellee.
 No. 16647.
 United States Court of Appeals Ninth Circuit.
 Oct. 20, 1960, Rehearing Denied Dec. 2, 1960.
 
 Herzig & Jessup, Los Angeles, Cal., for appellants.
 Ben Gould, Los Angeles, Cal., for appellee.
 Before STEPHENS and BARNES, Circuit Judges, and KILKENNY, District judge.
 BARNES, Circuit Judge.
 
 
 1
 Appellee brought this action in the district court for royalties under a contract, for damages and injunction for unfair competition after termination of the contract, and miscellaneous other relief. The district court granted interlocutory judgment for appellee, and from this judgment appellants press this appeal. Jurisdiction below was based on 28 U.S.C. 1332. This court has jurisdiction on appeal. 28 U.S.C. 1291.
 
 I-- Facts
 
 2
 Appellee KoolVent owns a group of patents and trademarks in the metal awning field. They do some manufacturing and selling, have granted rights under the patents and also have licensed groups to manufacture and sell, using their patents and trademarks. The licensees also receive advertising copy and sales material, and have the benefit of extensive nationwide advertising paid for by KoolVent.
 
 
 3
 In 1949 KoolVent licensed one Albert Belshaw to make and sell awnings. In June of 1956 the license was assigned to appellants in this action. The agreement provides that licensees are to pay royalties of twelve and one-half cents per square foot for awnings sold, and are to remit payment on the tenth of the following month. The license provides for a minimum royalty of $15,000 a year, payable monthly.
 
 
 4
 Commencing with January of 1957, appellants failed to remit payments for royalties, or to make reports showing sales of royalty items during this period. Finally, in August of 1957, KoolVent gave notice in writing that it considered the license terminated.
 
 
 5
 After the license was so terminated, appellants continued to make and sell awnings and other devices under the name KoolVent. They continued to use advertising material and selling material provided by appellee during the period of the license.
 
 
 6
 Sometime after the filing of the complaint in this action appellants commenced selling the same products under the trade-name 'KoolVane,' and continued to do so until the time of judgment.
 
 
 7
 The judgment[1] provides for the following relief: (1) Judgment for the amount of minimum royalties from January to July 1957, less amounts paid, plus interest. (2) Injunction against use of 'KoolVent,' 'KoolVane' or any colorable imitation of those trade-marks. (3) Relinquishment by appellants to appellee of all advertising matters, circulars, etc., all drawings, templates, patterns and customer lists for awnings and umbrellas. (4) An accounting of any net profits accruing to appellee from January 1957 to the time when appellants shall cease the use of the trade-mark 'KoolVent * * * or the confusingly similar trademark 'KoolVane." A special master was appointed to take evidence on the accounting, and any future colorable imitation of the trade-name. (The conclusions of law provide that appellee shall have judgment for the net profits, but the judgment does not, except inferentially.) (5) Costs.
 
 
 8
 We note the most important patent involved in the license, the Houseman Patent, expired in 1954.
 
 II-- Appellants' Contentions
 
 9
 Appellants allege some twenty-five errors. Much of appellants' argument would seem inapposite in view of the nature of the judgment. We shall discuss the primary positions taken by appellants in turn.
 
 
 10
 ( 1) There is no basis on which appellee is entitled to royalties.
 
 
 11
 This argument assumes that the trial court gave plaintiff recovery for royalties after the termination of the contract. As we read the judgment, the trial court awarded damages based on net profits after the termination of the contract. We fail to see how this is directly related to either the $15,000 minimum payment or the twelve and one-half cent per square foot royalties payable under the license.
 
 
 12
 Appellants argue from Fageol & Tate v. Baird-Balihache Co., 1931, 138 Cal.App. 1,4,5 P.2d 75, 76, that the licensor could either terminate the contract upon default or could continue the contract in force and insist on payment of royalties as they accrued. 'They could not do both.' Appellee cites Seagren v. Smith, 1944, 63 Cal.App.2d 733, 147 P.2d 682, for the proposition that if the licensee continues to take advantage of the benefits of the contract after termination, then the licensor can recover royalties on a theory of implied contract. Appellants point out that in Seagren it was the licensee, not as here the licensor, that terminated.
 
 
 13
 While this discussion raises an interesting point, we feel it inapplicable to this case, in view of the language of the judgment.
 
 
 14
 ( 2) No royalties could accrue after expiration of the patent, even assuming an enforceable agreement.
 
 
 15
 This argument seems applicable, but only to the limited portion of the judgment which allowed recovery of the minimum royalty from January to July of 1957.
 
 
 16
 We are asked to assume that the only benefit obtained under the license was the right to manufacture under the Houseman patent, which had expired in 1954. The argument, citing Bettis Rubber Co. v. Kleaver, 1951, 104 Cal.App.2d 821, 825, 233 P.2d 82, 84, is that the law presumes that royalties are not to be paid after the expiration of the patent, though the parties may contract otherwise. Appellants state that there are no other patents in force.
 
 
 17
 Appellee concedes the correctness of appellants' legal position, but points out the following facts: (a) There are other patents in force (Exhibits, pp. 313-360); (b) the intention to pay royalties after expiration was expressed in the contract (Clause 9(a), Agreement) and clearly expressed; (c) the rights to the trade-marks still exist.
 
 
 18
 Appellee characterized the contract as permissive-- that appellants can use any or all of the various patents and marks, but need not use any of them. With this, in view of its terms, we agree.
 
 
 19
 (3) The illegality of the contract.
 
 
 20
 This is the principal point urged on this appeal. Appellants complain of three of the clauses in the contract as being illegal; thus voiding the contract. Even if the contract were illegal it would only affect the judgment as to the minimum royalties allowed for the January to July 1957 period. As to the remaining time it seems clear that appellants were using appellee's other property. Illegality would require a remand, as the 'equities' of the situation would be affected by this change in the judgment. The trial judge disposed of the illegality problem in Finding 15, which reads as follows:
 
 
 21
 'That it is not true that those portions of the Agreement requiring said Defendants to pay to Plaintiff royalties as hereinbefore found are unenforceable at law or in equity on account of the provisions of said Agreement.'
 
 
 22
 We consider each of the alleged causes of illegality in turn:
 
 
 23
 (a) Illegality of Clause 9(e).
 
 
 24
 Clause 9(e) restricts the licensee for two years after termination of the license. Undisputedly this clause is illegal.[2]
 
 
 25
 Appellants urge that the clause is inseparable from the rest of the contract, and thus voids the whole contract. They argue that since there was no attempt to separately state which of the various considerations were equivalents, the contract cannot be broken down and saved. Appellants cite and rely upon California Civil Code 1608:
 
 
 26
 'Illegal consideration; Effect of its illegality. If any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract, is void.'
 
 
 27
 Appellants cite cases in which this section has been applied to void a contract, most of which concern a much more important part of the consideration.
 
 
 28
 Appellee points out that the clause is void only because of California Business & Professions Code 16600, which reads as follows:
 
 
 29
 'Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void.'
 
 
 30
 Appellants emphasize that this section provides that the contract be void only as to the illegal portion. We think the code sections must be construed together, and that the specific language controls the general. The California Business & Professions Codes were enacted by the state legislature after the Civil Code sections, and presumably with the general language of the Civil Code in mind. It was the legislative intent to make such a contract as this severable. Thus, reading the two code sections together, we cannot hold as a matter of law that the trial court was in error in differentiating the Hazelton rule and holding the contract severable. Hazelton v. Sheckels, 1906, 202 U.S. 71, 26 S.Ct. 567, 50 L.Ed. 939.
 
 
 31
 (b) Illegality of Clause 10(c).
 
 
 32
 Clause 10(c) provides for the grant-back of any related patents developed by the licensee.[3] Appellants assert that this clause is illegal under United States v. Aluminum Company of America, D.C.S.D.N.Y.1950, 91 F.Supp. 333.
 
 
 33
 Appellee points out that in the Aluminum Company case the grant-back provisions were held illegal only 'in the peculiar context of the industry,' and that there 'these particular grant-back provisions constituted a potential restraint.' Appellee further cites Transparent-Wrap Maching Corp. v. Stokes & Smith Co., 1947, 329 U.S. 637, 67 S.Ct. 610, 91 L.Ed. 563, which held that the inclusion in a license of the condition requiring the licensee to assign improvement patents is not per se illegal and unenforceable. We agree. This is a matter for determination by the trial court, and we cannot rule his interpretation was clearly erroneous.
 
 
 34
 (c) Illegality of Clause 12(a).
 
 
 35
 On its face, Clause 12(a) is undisputably invalid.[4] It prevents the licensee from making or selling during the life of the contract any other awnings.
 
 
 36
 However, by an agreement dated June 18, 1956,[5] the parties excised the clause, and agreed that this clause was no longer a part of the contract. Appellee cites two cases in support of the curative effect of removing the objectionable clause. Westinghouse Electric Corp. v. Bulldog Elec. Products Co., 4 Cir., 1950, 179 F.2d 139, 145; Standard Oil Co. (Indiana) v. United States, 1931, 283 U.S. 163, 181, 51 S.Ct. 421, 75 L.Ed. 926. The latter case is an antitrust action which did not involve enforcement of the contract in question, and is inapposite. Westinghouse seems to be collateral authority, although the offending clauses were removed by letter agreement, as is the case here. But again that action was for patent infringement, and did not involve directly the offending contracts. Appellants cite no authority to the effect that a clause cannot be amputated in this fashion. In Fong v. Miller, 105 Cal.App.2d 411, 414, 233 P.2d 606, it appears the waiver came when suit was filed.
 
 
 37
 If this clause be inseverable, the contract would have been void in its inception (McCullough v. Kammerer Corp., 9 Cir., 1948, 166 F.2d 759), and the latter agreement would not constitute a new, valid contract. But it seems highly unfair to this court that we should be asked to knock out the entire contract when the clause was apparently never enforced (unlike the factual situation in McCullough, supra), and the licensor voluntarily relinquished his rights under the illegal clause long prior to litigation. We choose to regard the clause as severable, as did the court below, and preserve the contract. United States Consol. Seeded Raisin Co. v. Griffin & Skelley Co., 9 Cir., 1903, 126 F. 364.
 
 
 38
 The California courts have continually strained to put such a construction on covenants in restraint of trade as to save part of the contract, if possible. Edwards v. Mullin, 1934, 220 Cal. 379, 30 P.2d 997. If the portion of the contract restraining trade can be severed, it is the apparent policy of the California courts to rule that it shall be, and the part not so tainted enforced. Fidelity Credit Assurance Co. v. Cosby, 1928, 90 Cal.App. 22, 265 P. 372; Pacific Wharf & Storage Co. v. Standard Am. Dredging Co., 1920, 184 Cal. 21, 192 p. 847.
 
 
 39
 ( 4) Doctrine of generic designation.
 
 
 40
 Appellants contend that the evidence showed that the name 'KoolVent' had become generic for a certain type of awning, and had thus passed into the public domain when the basic patent expired, and that thus appellants were entitled to use the name.
 
 
 41
 Appellants' evidence could have established that an awning of the type licensed by KoolVent was referred to in the trade as a 'koolvent' type awning. There was no evidence that among consumers the same was true.
 
 
 42
 Appellants point out that the name Kool-Vent is applied to a whole line of appliances including various types of awnings and umbrellas. They further point out that the same type awning is made by many others and marketed under a variety of trade-names.
 
 
 43
 But here the trial judge found against appellants. "KoolVent' is not a generic term for items mentioned in said Agreement.' (Finding 16.) Again, we cannot hold this finding of fact is clearly erroneous on the record before us.
 
 
 44
 The only questions we have about the judgment concern that portion ordering damages measured by net profits from January 1957 when the agreement was in effect, rather than from August 1, 1957, when the judgment terminates liability for minimum royalties. This requires appellants to pay damages and royalties for this period when the agreement was in effect. The only wrong committed by appellants in this period was default in royalty payments. The judgment should be amended to assess damages for the period January to July 1957 as the higher of either accrued royalties under the agreement, or minimum royalties.[6]
 
 
 45
 The interlocutory judgment when amended as suggested above, is affirmed, and the action remanded for such modification, and for further proceedings for the determination of damages, if any, properly to be awarded. National Van Lines v. Dean, 9 Cir., 1956, 237 F.2d 688, 694.
 
 
 
 [1]
 Findings of Fact, Conclusions and Judgment, as orginally prepared, were inadvertently signed by the court on May 21, 1959. By order dated August 31, 1959, revised Findings, Conclusions and Judgment, also dated August 31, 1959, were signed and filed
 
 
 [2]
 Clause 9(e) reads: 'In the event of termination, Licensee, its principals, officers, or managing directors shall not directly or indirectly engage in the awning business in said territory or in the territory of any other Koolvent licensee for the period of two years following the date of such termination.'
 
 
 [3]
 Clause 10(c) reads: 'In the event Licensee or any of its employees shall make or acquire any invention or improvement relating to the licensed inventions, then the Licensee shall disclose and communicate such invention or improvement to Koolvent and shall aid and assist in acquiring patent protection thereof at the expense of Koolvent. Any such invention or improvement shall be assigned to Koolvent, together with all patents rights thereunder so that Licensee and all other licensees of Koolvent shall have a non-cancellable royalty-free license as to any such inventions or improvements during the life of this agreement.'
 
 
 [4]
 Clause 12(a) reads: 'Licensee, its principals, officers or managing directors will not, directly or indirectly, during the life of this contract make or sell any other awnings. This provision shall apply particularly to said principals, officers, or managing directors of Licensee more especially, in case of severance of such relationship, for a period of two years from the date of such severance.'
 
 
 [5]
 This agreement was in the form of a letter, the complete text of which is as flooows (Appendix 2, Appellee's Brief):
 'June 18, 1956
 'Messrs. George Zajicek, Jr.
 and Don R. Zajicek
 'c/o Mr. Albert H. Hill
 'KoolVent of California, Inc.
 '5510 W. 104th Street
 'Los Angeles 45, California
 'Gentlemen:
 'This is with reference to an 'amendment' dated October 5, 1949 to a license agreement of the same date between KoolVent Metal Awning Corporation of America as licensor and Albert Belshaw of Detroit as licensee.
 '(1) Said amendment referred to a limitation whereby said licensee would be required to make awnings of the 'jammed' pan type in California. Said limitation has not been in effect for a number of years, and in fact, we do not believe Belshaw's successor, KoolVent of California, has been making awnings of the 'jammed' pan type since that time.
 '(2) Said amendment refers also to a license issued to a prior licensee of five California counties in which there was at the time a question of default on the part of the licensee for those counties. As a matter of fact, that license was abandoned shortly thereafter.
 'Neither of the above two restrictions is now in effect, and this letter will be your written assurance thereof.
 'For your further information, the restrictions in the first sentence of section 12 clause (a) of the License Agreement and in clause (h) of the same section are no longer in effect.
 'This letter is sent you in quadruplicate so that all copies may be signed by you and by us, with two copies to be returned to us, with all copies to be attached to the License Agreements.
 'Koolvent Metal Awning Corporation of America By. ... (illegible) ............... Vice President 'Coleman Harrison 'Secretary 'Agreed to: 'George A. Zajicek, Jr. 'Don R. Zajicek'
 
 
 [6]
 This point is not argued in Appellants' Brief, but is covered by Specification of Error 11, Appellants' Brief, p. 6