**SURGICENTERS OF AMERICA, INC.,**
**an Arizona Corporation,**
**Plaintiff-Appellant,**

v.

**MEDICAL DENTAL SURGERIES, CO.,**
**an Oregon Corporation dba Medical**
**Dental Surgicenters, Defendant-Appellee.**

**No. 77–2490.**

United States Court of Appeals,
Ninth Circuit.

May 16, 1979.

Rehearing Denied Aug. 22, 1979.

John Moran, Phoenix, Ariz., for plaintiff-appellant.

Paul Gerhardt, Portland, Or., for defendant-appellee.

Before GOODWIN and ANDERSON, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Appellant, Surgicenters of America, Inc. (Surgicenters), brought this action against appellee, Medical Dental Surgeries Co., dba Medical Dental Surgicenters (Medical), under the Trademark Act of 1946 as amended, 15 U.S.C. § 1051 *et seq.*, for infringement of its registered service mark, "Surgicenter." The parties filed cross-motions for summary judgment, based upon agreed facts, 45 exhibits, answers to interrogatories, and two depositions. The district court denied appellant's motion and granted appellee's motion, finding "Surgicenter" was not a lawfully registered service mark. We affirm.

### Factual Background

The basic facts are undisputed, both parties accepting a summary contained in the opinion of the district court. In March, 1970, a month after operating a "facility for one-day surgical care" in Phoenix, Arizona, Surgicenter, Inc., applied for registration of the service mark "Surgicenter" for "services rendered in an in and out surgical facility." On August 31, 1971 the mark "SURGICENTER" was registered to Surgicenter, Inc. "For: PROVIDING FACILITIES FOR DOCTORS TO PERFORM OPERATIONS ON PATIENTS".[1] On Octo-

ber 6, 1971, the registration was assigned to appellant.

Since the registration of the service mark, Surgicenters has licensed use of the mark in other states.[2] The doctors who formed the original corporation have worked since 1968 to popularize their concept of economical one-day surgical care to insure its acceptance by major insurance carriers.

In 1962 Medical, an Oregon corporation, filed the assumed business name "Medical Dental Hospital Co." and did business under that name until December, 1972, when the name was changed to "Medical Dental Surgeries Co." In January, 1975, Medical changed its name to "Medical Dental Surgicenters" and filed this business name with the Oregon Corporation Commission. Medical provides facilities for out-patient surgical procedures.

On January 28, 1975 Surgicenters notified Medical that Medical's use of the name "Surgicenter" infringed Surgicenters' mark. On June 13, 1975, Surgicenters filed this action to enjoin Medical from further use of the term, to require an accounting and payment of profits for its use since notification, and for damages for infringement

### Opinion of District Court

The district court, in its opinion granting appellee's motion for summary judgment, held that the mark "Surgicenter" was not a lawfully registered service mark because it was "generic" and thus not registrable. The court concluded further that if the term were considered "descriptive" rather than "generic", it had not "developed a secondary meaning in this area in which

---

\* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. The Patent Office examiner found the description of the services in the initial application indefinite. The application was first amended to insert the word "Surgical" before "services". A supplemental amendment incorporated the language now included in the registered mark.

2. The district court noted that, "Under its service mark Surgicenters acquires land, zoning and license applications, health permits, building plans and leasing arrangements. It provides personnel training, management, operations manuals, quality control and billing. It contracts with corporations in other cities and states to provide for them for a fee the above services and to allow the use of its service mark."

Medical operates". In a judgment based upon its opinion, the court denied the injunction and demand for an accounting and damages.

In determining that the term "Surgicenter" is generic the court concluded that "Surgicenter" is a "coined word of the combination and abbreviation type which clearly connotes a center for surgery". Since the term "surgery center" obviously "would not be capable of registration because it is quite clearly generic", the term "Surgicenter" was likewise found to be generic.[3]

The district court held further: "Although there are undoubtedly those who connect 'Surgicenter' with the Arizona corporation, the consuming public generally understands the word to mean exactly what it says. This is amply demonstrated in the exhibits." Among the exhibits upon which the court relied was a proposed rule of the United States Department of Health, Education and Welfare appearing in 38 Fed. Reg. 313–81 (1973) defining "Health Care Facilities". The definition included "facilities providing surgical treatment to patients not requiring hospitalization (surgicenters), which are not part of a hospital but which are organized and operated to provide medical care to out-patients".[4] Other exhibits included magazine and medical journal articles, letters and a television transcript which used the term "surgicenter".[5]

## Contentions on Appeal

Appellant contends that it "coined an arbitrary and fanciful word through the combination of two common or ordinary words" and that the trademark Surgicenter is neither generic nor descriptive. It argues that the district court erred in failing to address properly the issue of genericness, used an analysis of descriptiveness to conclude that the word is generic, used "a scalpel technique" as a method of analysis, misapplied the burden of proof, and its opinion is contrary to case law with respect to combination of an abbreviated word.

## Summary Judgment

■ Summary judgment is appropriate where no material issues of fact exist and where a party is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P. Here the parties made cross-motions for summary judgment following extensive discovery. As appellant states in its reply brief:

*Surgicenter: An Innovation in the Delivery and Cost of Medical Care,* ARIZONA MEDICINE (October 1969). The article repeatedly draws the attention of the reader to ". . . the concept of the Surgicenter . . ." in such a way that the impression is summarized in a memo from the Deputy Assistant Secretary of Defense (Fig. 2 of the article).

"We have recently learned of a new concept in health facilities which is now under development, known as 'surgicenters'.

"We think this is a worthwhile concept . . .. In this connection, attached is a copy of an agreement between a health planning council in Arizona and two physicians in that State who are now developing a surgicenter." (Plaintiff's Supp. Memo Exh. 3)

If the plaintiffs used the mark from the very beginning in a way that the public connected the term with the service rather than with the server, then they may have contributed to the genericness of the term. The critical period is when the service first hits the market. See *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938).

---

**3.** In correspondence with counsel for Fort Wayne Surgicenter, Inc., counsel for appellant initially took the position that "Fort Wayne Surgical Center" would not be an acceptable substitute for "Fort Wayne Surgicenter, Inc." inasmuch "as the words 'Surgical Center' and 'Surgicenter' sound very much the same, and the use of the former . . . is likely to cause confusion in the minds of potential users of our facility." (Letter dated February 16, 1973, App. p. 174). Apparently appellant later concluded, on the basis of advice from other counsel, that it would not press the issue of infringement in the use of "Surgical Center".

**4.** The final regulation changed "surgicenters" to "ambulatory surgical centers".

**5.** The footnote listing exhibits reads in part:
Plaintiff's answers to defendant's interrogatories abound with examples too numerous to mention. They show the term "surgicenter" was used generically by the Library of Congress, newspapers, periodicals and numerous out-patient facilities not connected with plaintiff.

Of particular note is the article by John L. Ford, M.D. and Wallace A. Reed, M.D., the founders of Surgicenters, Inc., entitled *The*

The case was submitted on stipulated facts and the parties agreed that there were no genuine issues of material fact. Where the matter is submitted to the court based upon affidavits, exhibits and certain stipulated facts, and where no testimony was taken, the determination by the court is a question of law, readily reviewable by the appellate court. . .
It is this legal proposition [the conclusion that two abbreviated, ordinary words into a single word created a generic term] which appellant requests this court to review along with other issues of law raised in appellant's opening brief.

In other words, this was a trial on a stipulated record and was so intended by the parties.[6] There are no genuine issues of material facts. It is a proper case for disposition through summary judgment.[7]

### Validity of the Service Mark

(a) Effect of Registration

15 U.S.C. § 1057(b) provides that:

A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registration, registrant's ownership of the mark, and of registrant's exclusive right to use the mark in commerce in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated therein.

The district court properly recognized that a "properly registered service mark is presumed to be valid".[8]

(b) Categories of Marks

The cases identify four categories of terms with respect to trademark protection: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. As the district court correctly noted, the lines of demarcation are not always clear, and the "entire area of trade or service marks . . . is fraught with difficulties and ambiguities".[9]

The basic principles of trademark law, including a description of the four categories of mark, are set forth in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–11 (2 Cir. 1976). The different categories may be summarized as follows:

A "generic" term is one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species. It cannot become a trademark under any circumstances. *Abercrombie & Fitch, supra*, 537 F.2d at 9–10.

A merely "descriptive" term specifically describes a characteristic or ingredient of an article or service. It can, by acquiring a secondary meaning, i. e., becoming "distinctive of the applicant's goods", become a valid trademark. *Id.* at 10.

A "suggestive" term suggests rather than describes an ingredient, quality, or charac-

---

**6.** See *Flying Diamond Corporation v. Pennaluna & Co., Inc.*, 586 F.2d 707 (9 Cir. 1978), where this court affirmed a summary judgment, in which the district court had noted that the case was in effect " 'a trial on a stipulated record. There is nothing to weigh, there is no credibility involved' ". 586 F.2d at 713, n. 3.

**7.** See *e.g., United States Jaycees v. San Francisco Jr. Cham. of Com.*, 354 F.Supp. 61, 68–69 (N.D.Cal.1972), *aff'd*, 513 F.2d 1226 (9 Cir. 1975).

**8.** See *Maternally Yours v. Your Maternity Shop*, 234 F.2d 538, 542 (2 Cir. 1956). This case, like many cited, concerns trademarks rather than service marks. "Generally speaking, however, . . . the decisions relating to trademarks are applicable by analogy to service marks." E. Vandenburgh, Trademark Law and Procedure 1 (2d ed. 1968).

**9.** The district court in a footnote quoted from this court's opinion in *HMH Publishing Co., Inc. v. Brincat*, 504 F.2d 713, 716 (9 Cir. 1974):

Trademark infringement is a peculiarly complex area of the law. Its hallmarks are doctrinal confusion, conflicting results, and judicial prolixity. The source of this difficulty is that each case involves an effort to achieve three distinct objectives which, to a degree, are in conflict. These are: (1) to protect consumers from being misled as to the enterprise, or enterprises, from which the goods or services emanate or with which they are associated; (2) to prevent an impairment of the value of the enterprise which owns the trademark; and (3) to achieve these ends in a manner consistent with the objectives of free competition.

teristic of the goods and requires imagination, thought, and perception to determine the nature of the goods. A suggestive term is entitled to registration without proof of secondary meaning. *Id.* at 10–11.

An "arbitrary or fanciful" term is usually applied to words invented solely for their use as trademarks and enjoys all the rights accorded to suggestive terms—without the need of debating whether the term is "merely descriptive" and with ease of establishing infringement. *Id.* at 11.[10]

(c) Determination of Genericness

In concluding that the term "Surgicenter" is generic the district court found "most pertinent" the case of *Cummins Engine Company, Inc. v. Continental Motors Corp.*, 359 F.2d 892, 894, 53 CCPA 1167, 1169 (1966), where the court affirmed a decision of the Trademark Trial and Appeal Board canceling the registration of the mark "Turbodiesel". In that case the court said in part:

> We rely primarily upon the 1935 Funk & Wagnalls New Standard Dictionary definitions of "turbine," its combining form "turbo," and of "diesel," and a March 1953 "Flight" magazine article, all of which are reproduced in the board's decision as reported, 132 USPQ at 557. In our view, the definitions alone indicate that "turbodiesel" is a word which by its nature will convey a specific and correct meaning which is such that it cannot become a trademark as a result even of origination and first use. . . . The term "turbodiesel," as we see it, is a natural composite form for a class of engines into which appellant's engines fall.

The district court here similarly concluded from dictionary definitions that appellant has "taken two generic terms and combined them into a term which is still generic". The court said:

> "Surgical" is an adjective defined as "relating to, or concerned with surgeons or surgery." Webster's Third New International Dictionary (1966). "Center" is a noun defined as "a place, area, person, group, or concentration marked significantly or dominatingly by an indicated activity, pursuit, interest, or appeal: a concentration of requisite facilities for an activity, pursuit or interest along with various likely adjunct conveniences," as, "medical center".

The court concluded that the challenged service mark "Surgicenter" was simply an "abbreviation of surgical functions as an adjective to identify a center as a concentration of facilities relating to surgeons or surgery".[11]

The district court also relied upon the decision of this court in *Rohr Aircraft Corporation v. Rubber Teck, Inc.*, 266 F.2d 613, 623 (9 Cir. 1959), where the court held that "a generic name, or a name merely descriptive of an article of trade cannot ordinarily be employed as a trademark". The court concluded accordingly that where one party used the mark "Duo Seal" and the other party used "Lock O Seal", the word "seal" described both devices and could not be appropriated as a trademark.

Appellant attempts to distinguish both *Cummins Engine* and *Rohr Aircraft* on the ground that the courts in those cases did not find the mark generic but descriptive. As the district court noted, however, courts often have difficulty in distinguishing between generic and descriptive terms. This is well illustrated in *Application of Sun Oil Co.*, 426 F.2d 401, 403, 57 CCPA 1147, 1149 (1970) where the majority opinion found the

---

**10.** See also *Miller Brewing Co. v. G. Heileman Brewing Co., Inc.*, 561 F.2d 75 (7 Cir. 1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978).

**11.** Dictionary definitions have been considered in many cases in determining whether a tradename is generic. See, *e.g., United States Jaycees v. San Francisco Jr. Chamber of Commerce, supra; Henry Heide, Incorporated v.*

*George Ziegler Company*, 354 F.2d 574, 576 (7 Cir. 1965); *Miller Brewing Co. v. G. Heileman Brewing Co., supra.* While not determinative, dictionary definitions are relevant and often persuasive in determining how a term is understood by the consuming public, the ultimate test of whether a trademark is generic, as discussed *infra.*

term "Custom Blended" descriptive, without a secondary meaning being established, while a concurring opinion found the term so "highly descriptive" that it could not be accorded trademark rights even if a secondary meaning were established. Other courts have distinguished between a "generic or common descriptive term" and a "merely descriptive term". See, e. g., *Miller Brewing Co. v. G. Heileman Brewing Co., supra,* 561 F.2d at 79. In *Rohr Aircraft,* this court referred to "a generic name, or a name merely descriptive of an article of trade". Reading the opinion as a whole we conclude that the court intended to hold that the term in question was generic. Likewise in *Cummins Engine,* while the court did not use the word "generic", it did find the word "turbodiesel" by its nature conveyed a specific and correct meaning such that it could not "become a trademark as a result even of origination [or] first use".

The district court and both parties recognize that in making the sometimes elusive determination of genericness courts have consistently followed the test stated by Judge Learned Hand in *Bayer Co., Inc. v. United Drug Co.,* 272 F. 505, 509 (D.C.S.D. N.Y.1921): "What do the buyers understand by the word for whose use the parties are contending?"[12] If buyers take the word to refer only to a particular producer's goods or services, it is not generic. But if the word is identified with all such goods or services, regardless of their suppliers, it is generic and so not a valid mark. *King-Seeley Thermos Co. v. Aladdin Industries, Inc.,* 321 F.2d 577, 579 (2 Cir. 1963).[13]

The test was sharpened by the Supreme Court in *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938). ". . . [T]o establish a trade name . . . the plaintiff must show more than a subordinate meaning which applies to it. It must show that the *primary* significance of the term *in the minds of the consuming public* is not the product but the producer." 305 U.S. at 118, 59 S.Ct. at 113 [emphasis added].[14]

In *J. Kohnstam, Ltd. v. Louis Marx and Company, Inc.,* 280 F.2d 437, 440, 47 CCPA 1080, 1084 (1960), the court held that the trademark "Matchbox Series", as applied to toys packaged in small boxes was descriptive rather than indicative of origin, and was not registrable. The court concluded that even if the applicant for registration had by advertising over a period of some two and one-half years developed a secondary meaning as indicating the origin of the goods, such circumstance could not "take the *common descriptive* name of an article out of the public domain and give the temporarily exclusive user of it exclusive rights to it, no matter how much money or effort it pours into promoting the sale of the merchandise". See also *CES Pub. Corp. v. St. Regis Publications, Inc.,* 531 F.2d 11 (2 Cir. 1975), where the court held that the term "Consumer Electronics", as used in the title of a trade magazine within the electronics industry, was generic, and not subject to trademark protection. The court held further that unlike "merely descriptive" terms which can be registered as trademarks by proof of secondary meaning, a "generic" word cannot be validly registered as a trademark even if there is proof of secondary meaning. "The reason is plain

---

12. In *Bayer,* the plaintiff was able to show only that specialized buyers (chemists, physicians and druggists) understood the word "aspirin" to refer solely to plaintiff's product. "The crux of this controversy, however, lies not in the use of the word to these buyers, but to the general consuming public . . . ." 272 F. at 510.

13. A well-known treatise offers this distinction:
. . . [T]he function of a mark is to identify and distinguish the goods or services of one seller from those sold by all others. A mark answers the buyer's question "Who are

you? Where do you come from?" But the name of the product answers the question "What are you?" . . . [G]eneric designations tell the buyer what the product is, not where it came from." 1 J. McCarthy, Trademarks and Unfair Competition 405–6 (1973).

14. In *Kellogg Co.,* the Court held that the term "shredded wheat" is generic and no exclusive right to its use may be acquired. There was no basis for applying the doctrine of "secondary meaning".

enough. To allow trademark protection for generic terms, i. e., names which describe the genus of goods being sold, even when these have become identified with a first user, would grant the owner of the mark a monopoly, since a competitor could not describe his goods as what they are." 531 F.2d at 13.

Appellant argues that there is no "competent evidence as to what potential customers, i. e., doctors or patients understood or identified by the mark 'Surgicenter'". The district court recognized that while "there are undoubtedly persons who connect 'Surgicenter' with the Arizona corporation,[15] the consuming public generally understands the word to mean exactly what it says: This is amply demonstrated in the exhibits". From our examination of the 45 exhibits offered by the respective parties, we agree with the district court.

As appellant recognizes, the consuming public is composed primarily of doctors and their patients, as is true with a hospital or other medical facility. The exhibits contain letters from appellant and its counsel to the Department of Health, Education and Welfare, Library of Congress, the Superintendent of Documents, medical schools and other medical facilities,[16] Blue Cross organizations, news and medical publications,[17] and a physician who had used the term "Surgicenter" in a book entitled "Out Patient Surgery", and his publisher.[18] Typical of many responses received by appellant is a letter from L. H. Hughes, M.D., President of Walnut Creek Surgicenter, Walnut Creek, California, dated September 17, 1973: "I was not aware that this name was restricted in any way and we used it in a generic sense only." While Dr. Hughes and other doctors recognized the registration of the mark, it is clear from their letters that they had considered the word a generic term.[19] There is nothing in the record to indicate that any potential consumer considered the term "Surgicenter" to mean anything other than a surgical center.[20] The district court properly found that the consuming public connected the term "Surgicenter" with the service rather than the server.

We recognize that words "which could not individually become a trademark may become one when taken together". *Union*

---

15. Attached to plaintiff's answers to interrogatories is a list of over 200 physicians to whom facilities were provided by appellant in Phoenix, Arizona. It was stipulated that all physicians who used the service were residents of Arizona.

16. Letters were written to facilities using the term "Surgicenter" in Fort Wayne, Indiana; Livonia, Michigan; Walnut Creek, California; Melbourne, Florida; Miami, Florida; and Balu Cynwyd, Pennsylvania; calling attention to the registration of the term "Surgicenter", requesting assurance that the recipient would cease and desist from its use, and indicating that appropriate action would be taken if such assurance were not forthcoming. It is true, as appellant contends, that with the exception of appellee, all of these facilities then recognized the registration of the mark, although many indicated in their responses that they had assumed the term was generic.

17. It was stipulated in the pretrial order that the word "Surgicenter" had been used in Newsweek magazine and six medical publications.

18. See also discussion, *supra*, at pages 1012 and 1013.

19. Dr. Reed, one of the founders of Surgicenter, Inc., in a letter to the Administrator of the Michigan Surgicenter said in part:

Incidentally, while I recognize the word "surgicenter" is used in a generic sense, I would like to point out that the capitalized name is protected by a registered trademark and cannot be used by others without our specific approval.

In a letter to the Foundation for Medical Care, San Diego, California, Dr. Reed wrote in part:

As you can see from the enclosed copy of our January 1974 Progress Report to the Community Advisory Committee, you are not the first to use the registered Surgicenter name as a generic form.

20. In this respect *Zajicek v. KoolVent Metal Awning Corp. of America*, 283 F.2d 127, 133 (9 Cir. 1960), and *Enders Razor Co. v. Christy Co.*, 85 F.2d 195, 197 (6 Cir. 1936), are distinguishable. In *KoolVent* this court held that "*KoolVent*" was not "a generic term for items mentioned" in a license agreement, i.e., awnings. In *Enders Razor*, the court noted that if "Keen Kutter" was a "generic designation of the razor and the blades" it was also a "generic designation for knives, saws, hatchets, etc.".

*Carbide v. Ever-Ready, Inc.*, 531 F.2d 366, 379 (7 Cir.) *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976), and cases there cited. In *Union Carbide* the court concluded that the word "EVERREADY" had "acquired a secondary 'meaning' and on that basis the mark was valid". The district court here properly concluded that the term "Surgicenter" had not acquired a secondary meaning.[21] *Application of ADA Milling Co.*, 205 F.2d 315, 317, 40 CCPA 1076, 1078 (1953) is a good example of a combination of words resulting in a valid mark. In that case the court found that the trade mark "Startgrolay" for use on poultry feed, "viewed in its entirety", was a valid mark, even though if the mark were dissected, the "Start", "grow" and "lay" separately would be nonregistrable. We find no case, however, which holds that the mere combination of words is sufficient in itself to make a mark registrable. There is a clear distinction between the word "Startgrolay" as applied to poultry feed and "Surgicenter" which obviously means surgical center. *ADA Milling* was distinguished in *Cummins Engine, supra*, where the court said: "We do not find the term here (Turbodiesel) to be such a deviation from a natural usage or an unusual unitary combination as to permit registration, in contrast to the terms in *In re Ada Milling Co.*" 359 F.2d at 895, 53 CCPA at 1170.[22] The same is true with respect to the term "Surgicenter".

In *Warner & Co. v. Lilly & Co.*, 265 U.S. 526, 528, 44 S.Ct. 615, 616, 68 L.Ed. 1161 (1924) the Court held names such as "Coco-Quinine" and "Quin-Coco" could not be appropriated as trademarks, the Court saying in part:

The name "Coco-Quinine" is descriptive of the ingredients which enter into the preparation. The same is equally true of the name "Quin-Coco." A name which is merely descriptive of the ingredients,

qualities or characteristics of an article of trade cannot be appropriated as a trademark and the exclusive use of it afforded legal protection. The use of a similar name by another to truthfully describe his own product does not constitute a legal or moral wrong, even if its effect be to cause the public to mistake the origin or ownership of the product.

(d) Descriptive Marks

■ While a "merely descriptive" term is not generally entitled to protection (15 U.S.C. § 1052(e)), if the applicant for registration can show that a "secondary meaning" has attached to the mark, so that the consuming public connects the mark with the producer rather than the product, the mark can be protected. *Carter-Wallace, Inc. v. Procter & Gamble Company*, 434 F.2d 794 (9 Cir. 1970). The district court found that even if the term "Surgicenter" were considered "descriptive" rather than "generic", "it has not developed a secondary meaning in this area in which Medical operates".

The history and policy behind the doctrine of "secondary meaning" and relevant factors to be considered were well summarized in *Union Carbide Corp. v. Ever-Ready, Inc., supra*. In that case the court assumed the correctness of the finding of the district court that Carbide's name "Everready" was descriptive, but held that Carbide had "clearly established the validity of its mark on the basis of secondary meaning". Substantial direct consumer testimony and consumer surveys demonstrated that "an extremely significant portion of the population associates Carbide's products with a single anonymous source". 531 F.2d at 381.[23] There was also substantial evidence of confusion on the part of the consuming public. *Id.* at 388.

The district court properly recognized that one of the indicia of secondary mean-

**21.** See further discussion of *Union Carbide* under "Descriptive Marks".

**22.** See also other cases decided by the Court of Customs in Patent Appeals cited in *Cummins Engine*.

**23.** There is no similar consumer testimony in this case to indicate that a significant portion of the consuming public associate "Surgicenter" with appellant's service.

ing is the likelihood of confusion among buyers, citing *Norm Thompson Outfitters, Inc. v. General Motors Corp.*, 448 F.2d 1293 (9 Cir. 1971). As the district court noted, the parties agree that there has been no actual confusion.[24] The court found that there was "no likelihood of confusion", saying in part:

> The only contact Surgicenters has made with Portland is a letter of inquiry concerning the possibility of establishing a facility. This does not establish any likelihood of confusion. No consumer surveys or extensive advertising campaigns have been presented to prove that consumers connect out-patient surgical centers with Surgicenters' sponsorship only. Indeed, as indicated in footnote 4, (see note 3, *supra*) the evidence is to the contrary.

**(e) Suggestive and Arbitrary and Fanciful Marks**

In pointing out the distinction between a "suggestive" term and a "descriptive" term, the court in *Abercrombie & Fitch Co., supra*, quoted from *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968):

> A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.

In applying this test to the service mark "Surgicenter", it is clear that the term is descriptive rather than suggestive.

The court in *Abercrombie & Fitch Co.*, also cited *General Shoe Corp. v. Rosen,* 111 F.2d 95, 98 (4 Cir. 1940), where the court distinguished between terms which are "descriptive" and terms which are "arbitrary or fanciful", saying in part:

> Under the well established rule of trade mark law, a word or phrase which is primarily descriptive of the article to which it is attached may not be appropriated by any one as his exclusive trade mark. (citing cases) On the other hand, an arbitrary or fanciful name, which has no relationship to the product, may be lawfully adopted and monopolized. *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629.[25]

*Abercrombie & Fitch* recognized also that a word may be in one category for a particular product, and in quite a different one for another, noting, for example, that "Ivory" would be "generic when used to describe a product made from the tusks of elephants but arbitrary as applied to soap". 537 F.2d at 9, n. 6.

The cases upon which appellant relies in support of its contention that the word "Surgicenter" is neither "generic" or "descriptive", but rather "suggestive" or "arbitrary and fanciful" are distinguishable. In *Coca-Cola Company v. Seven-Up Company,* 497 F.2d 1351, 1353 (C.C.P.A.1974) the Court of Customs and Patent Appeals held that the words "The Uncola" were not merely descriptive of soft drinks. The court quoted as applicable the language employed in *Vita-Var. Corp. v. Alumatone,* 83 F.Supp. 214, 215 (S.D.Cal.1949)—"a combination which has enough deviation from the common use of words and parts of words to

---

**24.** It was stipulated that (1) to the knowledge of the parties "no physician has been confused, mistaken or deceived as to the identity of plaintiff's or defendant's business, or has any other person believed that the two businesses are in any way related by reason of their respective uses of the word 'Surgicenter'"; and (2) neither party has ever "received any misdirected mail, telephone calls, inquiries or complaints which were intended" for the other.

**25.** In *Hamilton-Brown Shoe Co. v. Wolf Bros. & Co.,* 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629 (1916) the Court held that the words "The American Girl", adopted in connection with

shoes, was a "fanciful designation, arbitrarily selected by complainant's predecessors to designate shoes of their manufacture". The Court distinguished numerous cases where the mark was a geographical or otherwise descriptive term, noting that if the mark in question had been "American Shoes", those cases would be in point, but that "The American Girl" would be as descriptive of "almost any article of manufacture as of shoes; that is to say, not descriptive at all". 240 U.S. at 257, 36 S.Ct. at 271. Here the term "Surgicenter" is descriptive of the service.

make its registration as a trade mark valid". The court found a "total failure of the record to indicate that THE UNCOLA is or ever was merely descriptive of, or a common descriptive term for, the product".

Similarly in *Maremont Corporation v. Air Lift Company,* 463 F.2d 1114, 1116–1117, 59 CCPA 1152, 1156–1157 (1972), the court found that the word "Load-Carrier", while suggestive of the function of the class of goods produced (load supporting and dumping units for automobiles, automobile trailers, and small trucks) was "equally suggestive of many other things—e.g., wheel barrows, dump trucks, freight cars, steamships and elevators". There is no evidence in the record in this case that the term "surgicenter" is suggestive of anything except a surgical center.

Finally, appellant relies heavily on *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694 (2 Cir. 1961), where the court held that plaintiff had a valid common-law trademark in the term "Poly Pitcher". The court there recognized that the initial test was "what the expression meant to the purchasing public. If it meant a pitcher made of polyethylene it could claim no validity as a trademark; but if its connotation was arbitrary or fanciful, it met the test of a valid trademark." The clear distinction between the evidence here with respect to the term "Surgicenter" and the evidence relating to the term "Poly Pitcher" appears from the court's analysis in *Blisscraft*:

> The record is devoid of any worthwhile evidence to show that at the time when plaintiff first began to use the "Poly Pitcher" labels the public generally understood "poly" to be synonymous with polyethylene or that "Poly Pitcher" meant a pitcher which was made of polyethylene. Indeed, it would have been astonishing if it had any such understanding of terminology so essentially technical. We have been referred to no dictionary, general or scientific, which indicates that "poly" meant polyethylene. Webster's New International Dictionary (2d Ed. 1958) defines "poly" as "consisting of many," "a plurality," "a number

above the normal." In the absence of any evidence to the contrary, we cannot assume that to members of the public at large the word "poly," either alone or in combination with "pitcher," had any meaning other than that attributed to it by the lexicographer. Unless a word gives some reasonably accurate—some tolerably distinct knowledge—as to what the product is made of, it is not descriptive within the meaning of trademark terminology. 294 F.2d at 699–700.

In contrast, the district court here, on the basis of a careful analysis of the term "Surgicenter" through dictionary definitions and substantial evidence of its generic use by the consuming public, found the term generic, or if not generic, descriptive without having acquired a secondary meaning.

### Conclusion

We conclude that the district court properly found that (1) the term "Surgicenter" is generic and not registrable as a trademark; and (2) in the alternative, if the term is "merely descriptive" of the service, it has not developed a secondary meaning.

AFFIRMED.

GOODWIN, Circuit Judge, dissenting:

Faced with a difficult question in a complex area of law, the district court stated but did not apply the proper test to determine whether a name is generic. Even if the proper test had been applied, defendant's evidence was not sufficient to meet the heavy burden of proof it carried.

### I.

By statute, plaintiff's certificate of registration is prima facie evidence of the mark's validity. 15 U.S.C. § 1057(b). By case law, this means not only that the mark's challenger has the burden of going forward, but also that registration carries with it a "strong presumption of validity". *Miss Universe, Inc. v. Patricelli,* 408 F.2d 506, 509 (2d Cir. 1969), *quoting Maternally Yours, Inc. v. Your Maternity Shop, Inc.,* 234 F.2d 538, 542 (2d Cir. 1956). Therefore, "the burden of showing genericness [sic] rests

squarely on defendants." *E. I. DuPont de Nemours & Co. v. Yoshida International, Inc.,* 393 F.Supp. 502, 523 (E.D.N.Y.1975). *See also American Thermos Products Co. v. Aladdin Industries, Inc.,* 207 F.Supp. 9, 14 (D.Conn.1962), *aff'd sub nom. King-Seeley Thermos Co. v. Aladdin Industries, Inc.,* 321 F.2d 577 (2d Cir. 1963); 1 J. McCarthy, Trademarks and Unfair Competition 443 (1973). Particularly where, as here, the allegedly infringing name is identical to the registered mark, and its use began after the mark's registration, defendant carries the "burden of explanation and persuasion." *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.,* 411 F.2d 1097, 1101 (2d Cir. 1969), *cert. dismissed,* 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970). *Accord, Bayer Co. v. United Drug Co.,* 272 F. 505, 509 (S.D.N.Y.1921). The burden "is a heavy one," and "doubts should be resolved in favor of the trademark owner, especially if he can demonstrate having taken appropriate action to counteract or resist indiscriminate use of the mark by the public." *E. I. DuPont de Nemours & Co. v. Yoshida International, Inc.,* 393 F.Supp. at 523–24.[1]

To satisfy the heavy burden imposed on it, defendant had to meet the test of *Bayer* by proving that buyers of Surgicenters' services understood the name to be generic. The district court acknowledges that this should be its test in awarding summary judgment. Yet the court admittedly relies most heavily on *Cummins Engine Co. v. Continental Motors Co.,* 359 F.2d 892, 53 CCPA 1167 (1966), a case that did not raise the question of buyers' perception of the disputed name. *Cummins'* "dictionary test" supports the district court's holding that

"Surgicenter" is generic because, individually, "surgical" and "center" are in the dictionary. But this merely indicates that neither decision uses the correct test, buyer understanding of the disputed term.[2]

*Cummins* is at odds with the far more numerous and better-reasoned decisions that eschew a scalpel technique in favor of the required inquiry into what the words, together, mean to the consuming public. *E. g., Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694, 698–702 (2d Cir. 1961). In *Blisscraft,* the mark "Poly Pitcher" was held to be valid despite the presence of "poly" and "pitcher" in the dictionary. The Second Circuit did not even find the dictionary test urged upon it "worthwhile evidence" of the public's understanding of the term. "In the absence of any evidence to the contrary, we cannot assume that to members of the public at large the word 'poly,' either alone or in combination with 'pitcher,' had any meaning other than that attributed to it by the lexicographer." 294 F.2d at 699. We have chosen to ignore the dictionary test in this circuit. *United States Jaycees v. San Francisco Junior Chamber of Commerce,* 513 F.2d 1226 (9th Cir. 1975) (affirming district court holding that "chamber of commerce" is not generic over dissent noting presence of term in the dictionary).

The dictionary test is wrong because it is irrelevant. How or whether the dictionary defines a single word is not probative of what customers understand by a combination of words or a compound term like "Surgicenter".

"It is well settled that a coined word consisting of two words of ordinary

---

**1.** Plaintiff here has shown ample diligence in opposing others' use of its registered, presumedly-valid mark, including the bringing of this suit. It has protested those uses of "Surgicenter" that defendant has offered as proof the name is generic. Following plaintiff's objections, at least one clinic that had adopted the name "Surgicenter" changed its name, and the Government Printing Office suspended sales of a publication using the term.

**2.** "The manner in which the alleged mark has been used in magazines, newspapers, books, *dictionaries,* patents, and other publi-

cations, is significant as to how it is regarded *by the writers thereof.* * * * One reason that it would not be determinative [of validity] could be that the writers of those publications would not be representative of the purchasers of the goods or services." E. Vandenburgh, Trademark Law and Procedure 271 & n.19 (2d ed. 1968). (Emphasis added).

The district court does not claim that the author of Webster's Third New International Dictionary, on which it relied, is somehow representative of "Surgicenter" users.

meaning may be the subject of a trademark. As stated by Judge Galston in the case of *Henry Muhs Co. v. Farm Craft Foods, Inc.,* D.C., 37 F.Supp. 1013, at page 1015, 'The validity of the term Farmcraft as a trademark is attacked as descriptive because both the words Farm and Craft are said to be general terms and available to the public. *But the combination of two descriptive components into a single coined, arbitrary and fanciful word may be a perfectly valid, technical trademark.'* (Emphasis mine)." *National Trailways Bus System v. Trailway Van Lines, Inc.,* 222 F.Supp. 143, 145 (E.D.N.Y.1963) (holding "Trailways" valid mark).

*See also Coca-Cola Co. v. Seven-Up Co.,* 497 F.2d 1351 (C.C.P.A.1974) ("Uncola" valid mark for soft drink); *Maremont Corp. v. Air Lift Co.,* 463 F.2d 1114, 59 CCPA 1152 (1972) ("Load-Carrier" valid mark for shock absorbers); *Application of Colgate-Palmolive Co.,* 406 F.2d 1385, 56 CCPA 973 (1969) ("Chew 'N' Clean" valid mark for dentifrice); *Tigrett Industries, Inc. v. Top Value Enterprises, Inc.,* 217 F.Supp. 313 (W.D. Tenn.1963) ("Pitch Back" valid mark for baseball backstop and ball-return apparatus); *Feathercombs, Inc. v. Solo Products Corp.,* 306 F.2d 251, 255 (2d Cir.), *cert. denied,* 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962) ("Feathercombs" valid mark for hair-retaining combs); *Q-Tips, Inc. v. Johnson & Johnson,* 206 F.2d 144, 147 n.8 (3d Cir.), *cert. denied,* 346 U.S. 867, 74 S.Ct. 106, 98 S.Ct. 377 (1953) ("Q-Tips" not generic mark; "validity of a trade-mark is to be determined by viewing it as a whole"); *Enders Razor Co. v. Christy Co.,* 85 F.2d 195 (6th Cir. 1936) ("Keen Kutter" not generic for cutting tools); *W. G. Reardon Laboratories, Inc. v. B & B Exterminators, Inc.,* 71 F.2d 515 (4th Cir. 1934) ("Mouse Seed" and "Rat Seed" valid marks for rodenticides); *Wonder Manufacturing Co. v. Block,* 249 F. 748 (9th Cir. 1918) ("Arch Builder" and "Heel Leveler" valid marks for shoe insoles).

## II.

Having cited the proper test of a generic name (*Bayer*), the district court proceeded to decide the case before us on a factor irrelevant under that test. I do not dispute that, were the disputed term itself in the dictionary, its generic character might thereby be established. *Miller Brewing Co. v. G. Heileman Brewing Co.,* 561 F.2d 75, 80–81 (7th Cir. 1977) (presence of word "light" in dictionary one indication that word is generic); *Henry Heide, Inc. v. George Ziegler Co.,* 354 F.2d 574, 576 (7th Cir. 1965) (presence of "jujube" in dictionary evidence that word is generic). But the parties admit that plaintiff coined the term "Surgicenter".

This also impeaches the district court's holding as a strictly logical matter. The parties stipulate that there was no such thing as a "Surgicenter" until plaintiff invented the name. Yet the district judge held that the mark was generic *ab initio.* He held that defendant had *proved* that consumers automatically identified the made-up name, admittedly never used before, with a whole class of services produced by plaintiff, defendant, and others from the moment of the word's conception. This seems logically impossible to me.

## III.

What buyers understand by the term "Surgicenter" is a question of fact. *Bayer Co. v. United Drug Co.,* 272 F. at 509; *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d at 701. Because it shoulders the burden of proof, defendant must "make a rather clear and convincing showing that the principal significance of the word * * to the public" was generic. *E. I. DuPont de Nemours & Co. v. Yoshida International, Inc.,* 393 F.Supp. at 528.

Defendant has not met its burden here. There is reason to believe that the "consuming public", whose understanding of the term is all-important under *Bayer,* includes both patients and doctors. As to the latter, defendant presented statements from doctors that the term was generic; plaintiff had statements from physicians that the term was not generic. Further, plaintiff has undertaken many activities to promote

its name, linking the term coined to itself and distinguishing its product from that of others. These activities are apparently successful, as many corporations are paying plaintiff for the right to use its name.

The evidence concerning doctors was hardly "clear and convincing". More important, however, none of defendant's evidence came from the ultimate consumers of the services plaintiff and defendant provide. Much of it was from trade sources like medical journals and magazine articles that are irrelevant to what patients think of the term.

> "In attempting to determine what the buying public understood by 'Poly Pitcher' when the defendants began to use the mark, the manner in which the plaintiff and others used the words in trade magazines must be disregarded, for they were not intended for, and presumably did not reach, the eyes of the ultimate purchaser." *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d at 701.

The same is true of defendant's evidence on the use of "Surgicenter" by the Library of Congress, NBC News and others.

I find no case in which a mark was held generic without strong proof by the challenger of what the ultimate consumers—those who pay for the product—understand by the term. (Indeed, any such holding would violate the unchallenged rule of *Bayer*, which the majority opinion claims to follow.) In *Zajicek v. KoolVent Metal Awning Corp.,* 283 F.2d 127, 133 (9th Cir. 1960), *cert. denied,* 365 U.S. 859, 81 S.Ct. 827, 5 L.Ed.2d 823 (1961), we said that where evidence established that a term was understood as generic in the trade but not by consumers it was a valid mark. In *Bayer,* those in the trade realized that the contested term referred to plaintiff's product, but to the public it was generic. In selling

to the public, therefore, defendant was free to use plaintiff's trademarked name.

Defendant has not an iota of evidence about what patients and prospective patients understand by the word "Surgicenters". Neither does plaintiff, but it is defendant that carries the burden. It may be that the public would, in fact, view "Surgicenter" as the district court claims, synonymously with "surgical center". But defendant's merely saying so is not enough. "We have said, so often as not to require citation of authority, that marks must be viewed as the public sees them, i. e., in their entireties. In the present case, the record is devoid of evidence that the buying public would employ the scalpel technique", as claimed by appellees here. *Coca-Cola Co. v. Seven-Up Co.,* 497 F.2d at 1353.[3]

I would reverse.

---

**3.** I confine my dissent to the district court's holding that "Surgicenter" is generic and do not discuss its dictum that, were it not generic, the name would be descriptive without secondary meaning. If "Surgicenter" is invalid, it is because the term is generic: it defines the service. There is nothing descriptive about the term. *See Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 9–10 (2d Cir. 1976); E.

Vanderburgh, Trademark Law and Procedure 86–89 (2d ed. 1968). "For example, while 'cellophane' might be a * * * generic name for a sheet of transparent regenerated cellulose, words such as 'tough,' 'strong,' 'shiny,' 'transparent,' etc. would be descriptive terms with respect to that product." *Id.* at 88 (footnotes omitted).