CD SOLUTIONS, INC., Plaintiff,

v.

John Cleven TOOKER, Commercial
Printing Co., and CDS Networks,
Inc., Defendants.

Civil No. 97–793–HA.

United States District Court,
D. Oregon.

April 22, 1998.

David P. Petermen, James E. Geringer, Klarquist, Sparkman, Campbell, Leigh & Whinston, L.L.P., Portland, OR, D. Scott Hemingway, Sidley & Austin, Dallas, TX, for Plaintiff.

Regina Hauser, Allyson Krueger, Schwabe, Williamson & Wyatt, Portland, OR, for Defendants.

## OPINION AND ORDER

HAGGERTY, District Judge.

This case was transferred by defendants' motion from Dallas, Texas on 27 May 1997. Plaintiff has filed a motion for the court to take judicial notice, and a motion for summary judgment. These motions were argued in court on 30 March 1998. For the following reasons, plaintiff's motion to take judicial notice (doc. # 26–1) is denied and plaintiff's motion for summary judgment (doc. # 29–1) is granted.

## BACKGROUND

This case is a declaratory judgment action brought to resolve a federal question (plaintiff wants a judgment denying any alleged trademark infringement), as well as state law trademark and unfair competition claims. In early 1997 defendants Commercial Printing/CDS Networks, Inc., (with "CDS" standing for "Commercial Documentation Services") issued a "cease and desist" letter to plaintiff "CD Solutions," which sells and manufactures CD–ROM compact discs, asserting that plaintiff's use of the Internet domain name "cds.com" in association with the sale and manufacture of CD–ROMs infringed upon defendants' trade symbol "CDS," which is Trademark Registration No. 2,006,249. Plaintiff subsequently sought a declaratory judgment that there is no infringement because there is no likelihood of confusion (since the goods and services of the parties are substantially different), and that defendant should not assert a trademark right to the generic use of "CDs" or "cds.com."

Plaintiff filed the case in Texas. Defendants, made up of Oregon corporations based in Medford, successfully transferred the case to Oregon, and it was docketed here on 27 May 1997. Defendant John Tooker is an owner, director and officer of Commercial Printing and a director and officer of CDS Networks, a wholly owned subsidiary of Commercial Printing. Commercial Printing provides computer documentation services to software manufacturers throughout the world. CDS Networks is an "access provider" serving customers in Oregon and California. Both companies claim that they identify the services they provide by the "CDS" mark, and both advertise and sell their services on the Internet. The Trademark Registration indicates that Tooker commenced use of the CDS mark in April 1988.

Plaintiff CD Solutions registered "cds.com" with Network Solutions, Inc., as a "domain name" on the Internet. An Internet domain name is employed to facilitate human interaction with computers. A domain name on the Internet consists of two parts—the first is a host, and the second part is called a domain. The Internet uses several domains, including "com" for commercial business, "net" for network or communications organizations, "edu" indicating an educational institution, and "org" indicating a non-profit organization.

Network Solutions, Inc., acts as an Internet registrar for domain names. It adheres to a policy that if the host in a domain name is identical to another's registered trademark, then the registration of the domain name may be placed in abeyance until the dispute is resolved.

After plaintiff began using the domain name "cds.com" to conduct business on the Internet, defendants advised plaintiff of their trademark and requested that plaintiff transfer the domain name cds.com to defendants.

Defendants also filed a complaint with the Internet registrar. Subsequently, plaintiff filed suit seeking a declaratory judgment establishing its right to use "cds.com" in its business.

ANALYSIS OF PENDING MOTIONS

### 1. Plaintiff's Motion to Take Judicial Notice

■ Plaintiff asks the court to take judicial notice of the fact that the term "CDs" commonly refers to compact disc products and services. The court may take judicial notice of the fact that a term is used commonly by the public. Under Federal Rule of Evidence 201, a fact may be judicially noticed when it is not subject to reasonable dispute.

■ Plaintiff requests that the court take judicial notice of the fact that it is reasonably indisputable that the term CDs is used commonly to refer to compact disc products. Defendants assert that a classic issue of fact exists and precludes taking judicial notice.

Plaintiff argues that defendant Tooker "admitted" in his deposition that CDs is one commonly known abbreviation for compact disc products, that many courts have "consistently recognized the common usage of the term "CDs" for compact discs," and that this common usage is evident in advertisements, dictionaries, and publications.

The underlying dispute in plaintiff's summary judgment motion is whether plaintiff's use of "CDs" (pronounced see-deez) as its Internet domain name infringes upon defendants' trademark of "CDS" (pronounced see-dee-ess). Even if the term CDs can be a generic description of compact disc products, it also has other meanings (certificates of deposit or congressional districts, for example). Defendants also contend that "CDs" is not the *only* common term for compact discs—"CD's"—with the apostrophe—also is understood to mean compact discs, and therefore, there is not one generic term that means "compact disc."

The motion to take judicial notice is denied. The issue presented in this case is whether plaintiff is entitled to judgment declaring that it is not infringing on defendants' trademark, and it is pointless for the court to announce at this time that "CDs" is an abbreviation that is recognized to mean, among other things, compact discs.

### 2. Plaintiff's Motion for Summary Judgment

Plaintiff also seeks summary judgment that it does not infringe upon defendant Tooker's trademark for "CDS." Internet names are not case-sensitive, and plaintiff claims that it uses "cds" in its Internet domain name as a generic and merely descriptive name of the products it sells—CD–ROM products.

■ A claim for federal trademark infringement may be brought against any person who shall, without the consent of the holder of the registered trademark, "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Neither actual confusion nor intent is necessary to a finding of likelihood of confusion. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).

■ The test for unfair competition is similar as that for trademark infringement: "whether the public is likely to be deceived or confused by the similarity of the marks." *Century 21*, 846 F.2d at 1178, citing *New West Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1201 (9th Cir.1979). The confusion at issue here is any confusion that affects the purchasing decisions of actual or prospective purchasers of the services provided by defendants. *W.W.W. Pharm. Co. v. Gillette Co.*, 808 F.Supp. 1013, 23 U.S.P.Q.2d 1609, 1615, *aff'd*, 984 F.2d 567, 25 U.S.P.Q.2d 1593 (2d Cir.1993).

■ Unlike a patent or copyright, a trademark does not confer on its owner any rights. There is no prohibition against the use of trademarks or service marks as domain names. Only uses that infringe or dilute an owner's trademark or service mark are prohibited. *Lockheed Martin Corp. v.*

*Network Solutions, Inc.*, 43 U.S.P.Q.2d 1056 (C.D.Cal.1997). Generic marks are not entitled to protection, but arbitrary or fanciful marks are protected; descriptive or suggestive marks are protected if they have acquired a "secondary meaning" associating the mark with distinctiveness. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 2757, 120 L.Ed.2d 615 (1992).

■■■ In *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir.1988), the court explained that determining likelihood of confusion requires consideration of six factors:

1) the strength or weakness of the marks;

2) the similarity in appearance, sound, and meaning;

3) the class of goods in question;

4) the marketing channels;

5) evidence of actual confusion; and

6) evidence of the intention of defendant in selecting and using the alleged infringing name.

What follows below is an analysis of the facts of this case in accordance with these factors.

1. *Strength of the Mark*

■■■■■■ A strong mark is one that is used in a "fictitious, arbitrary and fanciful manner," whereas a weak mark is a mark that is a meaningful word in common usage, or one that is merely a suggestive or descriptive trademark. *J.B. Williams Co. v. Le Conte Cosmetics, Inc.*, 523 F.2d 187, 192 (9th Cir. 1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976) (citations and footnote omitted). Marks may be strengthened by extensive advertising, length of time in business, public recognition, and uniqueness.

"CDS" or "cds" are the initials to defendants' businesses, and as such are descriptive of those businesses. *Everest & Jennings, Inc. v. E. & J. Mfg. Co.*, 263 F.2d 254, 259 (9th Cir.1958). On the other hand, however, "CDs" is a generic term that means a number of things and is commonly used. While "CDS" may have acquired a slight secondary meaning with their consumers, who will think

of defendants when they see "CDS," the court concludes that the mark itself now denotes a term in common usage, and is not entitled to protection as a strong mark.

2. *Similarity in Appearance, Sound and Meaning*

In the context of Internet use, which is not case-sensitive, the mark used by plaintiff as a domain name is the same mark as registered by defendants under the trademark laws. The mark sounds different "see-dee-ess" versus "cee-dees", and has a different meaning.

3. *Class of Goods in Question*

The undisputed evidence is that defendants own the registered trademark "CDS," and that the mark is used to promote their business pertaining to providing commercial document services. Defendants concede that when first used in 1988, their "CDS" mark referred to their business in desktop publishing and printing. This was the trademark's registered use, and defendants have not formally expanded the trademark to encompass software disc media. Plaintiff registered the domain name "cds.com" to promote its CD–ROM business. Both parties now offer CD–ROM services.

4. *Marketing Channels*

Both parties market themselves through the Internet.

5. *Evidence of Actual Confusion*

Defendants argue that because both parties now offer CD–ROM replication services, and at the very least, issues of material fact regarding confusion exist, precluding plaintiff's summary judgment. While an Internet user seeking to purchase a product of defendants may go initially to the plaintiff's website, it is unlikely that an actual or prospective customer of defendants would be confused in its purchasing decision by the name "CDS" or the words "cds.com."

6. *Evidence of Defendant's Intention*

The evidence in this record does not suggest bad faith by plaintiff in this controversy. While both parties are in some form of the

"computer business," defendants' evidence of some market overlap (regarding "CD–ROM replication") indicates that the possible overlap has only recently developed.

When defendants obtained their trademark, they did no CD–ROM business. The term "Cds" (not "CDS") is generic, and a holder of a trademark must be denied protection if the mark becomes generic and is an expression that does not relate exclusively to a trademark owner's property. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir.1992).

■ The court concludes that defendants cannot now expand their trademark rights to generic descriptions existing in our everyday language. Whereas "CDS" are initials of defendants' companies, defendants' registration of the trademark in 1988 described a business pertaining to "desktop publishing and printing." Defendants now seek to expand the scope of this mark's protection to preclude the use of "CDs" in reference to compact disc products and services, and this renders the mark invalid as being generic. Accordingly, plaintiff's motion for summary judgment is granted.

CONCLUSION

Plaintiff's motion to take judicial notice (Doc. # 26–1) is DENIED. Plaintiff's motion for summary judgment (Doc. # 29–1) is GRANTED. This case is closed; any other pending motions are denied as moot.

IT IS SO ORDERED.