**IT IS FURTHER ORDERED** that defendant's cross-motion for summary judgment [Doc. # 17] is granted.

**555–1212.COM, INC., Plaintiff,**

v.

**COMMUNICATION HOUSE INTERNATIONAL, INC., Defendant.**

**No. C–99–1350–DLJ.**

United States District Court, N.D. California.

April 30, 2001.

John P. Sutton, Law offices of John P. Sutton, San Francisco, CA, for 555–1212.com, Inc., a California Corporation, plaintiff.

Matthew E. Digby, Bingham Dana LLP, Los Angeles, CA, for Communication House International, Inc., a New York corporation, defendant.

## ORDER

JENSEN, District Judge.

On March 23, 2001, the Court heard argument on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. John P. Sutton appeared on behalf of plaintiff; Pauline E. Calande appeared for defendant. Having considered the arguments of counsel, the papers submitted, the applicable law, and the record in this case, the Court hereby GRANTS summary judgment for defendant.

## I. BACKGROUND

A. *Factual Background and Procedural History*

Plaintiff 555–1212.com, Inc. ("555–1212.com") owns the domain name 555–1212.com. On August 25, 1998, plaintiff received a federal trademark registration on "555–1212.com" from the United States Patent and Trademark Office ("PTO") for use in "providing databases featuring telephone and directory information accessible via electronic communication networks."

Defendant Communication House, Int'l ("Communication House") owns the domain name 5551212.com. After extensive settlement negotiations, the parties are un-able to reach a settlement. Plaintiff now moves this Court for summary judgment in its favor on both the issues of validity of the mark and likelihood of confusion. Defendant opposes summary judgment for plaintiff and cross-moves for summary judgment on its own behalf.

B. *Legal Standard*

1. *Summary Judgment*

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment may be granted on all claims or on any part thereof. *See* Fed.R.Civ.P. 56(a), (d).

In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

A moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting to the nonmoving party the burden of raising genuine issues of fact by substantial evidence. *See T.W.*

*Electric*, 809 F.2d at 630 (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Kaiser Cement*, 793 F.2d at 1103–04).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *See T.W. Electric*, 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The evidence the parties present must be admissible. *See* Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49 (2nd Cir.1985); *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Hearsay statements found in affidavits are inadmissible. *See, e.g., Fong v. American Airlines, Inc.*, 626 F.2d 759, 762–63 (9th Cir.1980). The party who will have the burden of proof must persuade the Court that it will have sufficient admissible evidence to justify going to trial. The standard for judging a motion for summary judgment is the same standard used to judge a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### 2. *Trademark Infringement*

To prevail on a trademark infringement action, a plaintiff must demonstrate: (1) use and valid ownership of the trademark, (2) use by defendant of the same or similar mark in commerce, and (3) a likelihood of confusion due to use of the mark by the alleged infringer. *See* 15 U.S.C. § 1125(a); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th. Cir.1985).

### a. *Validity of the Mark*

When a plaintiff receives a federal trademark registration from the United States Patent and Trademark Office ("PTO"), she is entitled to a presumption that the mark is valid, that plaintiff is the owner of the mark, and that plaintiff has the exclusive right to use the mark in commerce in connection with the services specified in the certificate of registration. *See* 15 U.S.C. § 1057(b).

The Ninth Circuit has identified four categories of terms with respect to trademark validity: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *See Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.*, 601 F.2d 1011, 1014 (9th Cir.1979).

A "generic" term is one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species. *See id.* at 1014. It cannot become a trademark under any circumstances. *See id.* A merely "descriptive" term specifically describes a characteristic or ingredient of an article or service. *See id.* It can, by acquiring a secondary meaning, i.e., becoming "distinctive of the applicant's goods," become a valid trademark. *See id.* (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 10 (2nd Cir.1976)).

A "suggestive" term suggests rather than describes an ingredient, quality, or characteristic of the goods and requires imagination, thought, and perception to determine the nature of the goods. *See id.* at 1014. A suggestive term is entitled to registration without proof of secondary meaning. *See id.* at 1014–15. An "arbitrary or fanciful" term is usually applied to words invented solely for their use as trademarks and enjoys all the rights ac-

corded to suggestive terms without the need of debating whether the term is "merely descriptive" and with ease of establishing infringement. *Id.* at 1014–15.

Factors to consider when determining if secondary meaning exists include: (1) whether actual purchasers of the product bearing the claimed trademark associated the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether the use of the claimed trademark has been exclusive. *See Committee for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814, 822 (9th Cir.1996).

### b. *Likelihood of Confusion*

■ The Ninth Circuit has developed eight factors for determining likelihood of confusion. *See Brookfield Communications, Inc. v. West Coast Entertainment Corp.,* 174 F.3d 1036, 1053–4 (9th Cir. 1999). These include: (1) similarity of the conflicting designations; (2) relatedness of the two companies' products or services; (3) the marketing channels used; (4) the strength or distinctiveness of the mark; (5) the defendant's intent in selecting the mark; (6) evidence of actual confusion; (7) likelihood of expansion in product lines; and (8) the degree of purchaser care likely to be exercised. *See id.*

In the context of the Internet, the three most important factors are (1) similarity of the marks, (2) relatedness of the goods, and (3) simultaneous use of the Web as a marketing channel. *See GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir.2000).

## II. DISCUSSION

### A. *Validity of the Mark*

On summary judgment, a plaintiff has the burden of production to show that it owns a valid trademark. Here, plaintiff attempts to demonstrate a valid mark via the presumption of validity garnered by its PTO registration.

### 1. *The PTO Registration and the Presumption of Validity*

■ Plaintiff asserts that its PTO registration gives its mark a presumption of validity and is therefore distinctive. When a plaintiff receives a federal trademark registration from the PTO, she is entitled to a presumption that the mark is valid, that plaintiff is the owner of the mark, and that plaintiff has the exclusive right to use the mark in commerce in connection with the services specified in the certificate of registration. *See* 15 U.S.C. § 1057(b).

This presumption can be rebutted, however, upon a showing by a preponderance of the evidence that the mark is not protectable. *See Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.,* 644 F.2d 769 (9th Cir.1981). Defendant argues both in its opposition and its cross-motion that plaintiff's mark is either generic for telephone directory assistance services or descriptive without secondary meaning. In support, it provides a declaration from its attorney, Victor Polk, who states that he visited the "About Us" section of plaintiff's web site, which states:

> For the past fifty years, 555–1212 has been recognized throughout the U.S. and Canada by business and residential users as the premier brand for land-based telephone directory assistance information.

Polk Decl. ¶ 5. Polk also declares that he performed a search on February 27, 2001 of the website at www.ATT.com which found a news release from April 20, 1995 announcing a AT & T new service, "Directory Assistance for Any Distance" available by calling 1–900–555–1212. The news release further states:

> Now, one step does it all, which is good news for anyone who has used tradition-

al directory assistance service. Not only is it easy to use, but it's easy to remember and dial. We're using a number—555–1212—that callers already associate with directory assistance.

Polk Decl. ¶ 6, Exh. B. Polk further declares that he searched the web site marksonline.com, which purports to provide searches of domain names in the <.com>, <.net>, and <.org> categories, and found 123 domain names with both the characters 555 and 1212 somewhere in them. Polk Decl. ¶ 4, Exh. A.

Finally, Polk declares that he is personally aware that 555–1212 has been used for many years to denote telephone directory services because as a child in the 1960s, due to his father's business activities, he would often call a particular area code followed by the 555–1212 number in order to find telephone numbers in that area code.

The Court finds this declaration sufficient to rebut the presumption of validity endowed by plaintiff's PTO registration. *See Door Systems, Inc. v. Pro–Line Door Systems, Inc.,* 83 F.3d 169 (7th Cir.1996) ("The presumption of validity that federal registration confers . . . evaporates as soon as evidence of invalidity is presented. . . . Its only function is to incite such evidence and when the function has been performed the presumption drops out of the case."). Defendant's evidence supports the use of 555–1212.com as a descriptive or generic mark; therefore the Court finds that plaintiff's presumption of validity has been rebutted.

2. *Placement of Plaintiff's Mark on the Spectrum of Distinctiveness*

■ Once the presumption of validity evaporates, the burden shifts to the plaintiff to demonstrate that its mark falls into a protectable category. Plaintiff does not argue that its mark is arbitrary, as it is clearly related to the services which it offers. Nor is the mark suggestive. Suggestive marks are defined as those which require imagination, thought, and perception to reach a conclusion as to the nature of the goods. For example, "360 degrees" was found to be suggestive of sports shoes because one must use considerable imagination to remember that 360 is the number of degrees in a circle, connect that circle to movement, and imagine that the mark connotes the ability to pivot in the shoe for a full circle. *See Tanel Corp. v. Reebok Int'l, Ltd.,* 774 F.Supp. 49 (D.Mass.1990).

No imagination is necessary to figure out that 555–1212–com is a directory assistance web site. Plaintiff's web site provides databases featuring telephone and directory information accessible via electronic communication networks. Much like the telephone number "411" for local calls, "555–1212" is the number one would dial (after an area code) to seek out telephone and directory information services outside of one's local area code. To the average consumer, "555–1212.com" would indicate a commercial web site on the Internet which provides similar telephone and directory information.

Descriptive marks, on the other hand, convey an immediate idea of the ingredients, qualities, or characteristics of the goods. As mentioned above, 555–1212.com describes the type of service offered by plaintiff. Therefore, plaintiff's mark is at least descriptive. Moreover, in determining whether a word has a descriptive or suggestive significance as applied to a commercial service, it is proper to take notice of the extent to which others in a similar commercial context use the word. *See* 2 McCarthy on Trademarks and Unfair Competition (4th ed. 2000) ("McCarthy") § 11.69. The evidence from defendant that 123 other web sites use the numbers "555" and "1212" in their domain names and that AT & T offers a similar

service to plaintiff using the "555–1212" number further reinforces the finding that "555–1212.com" is at least descriptive in nature.

### 3. Whether Plaintiff's Mark is Generic or Descriptive

■ A "generic" term is one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species. *See Surgicenters,* 601 F.2d at 1014. Moreover, if the primary significance of the trademark is to describe the type of product rather than the producer, the trademark is a generic term and cannot be valid. *Anti–Monopoly, Inc. v. General Mills Fun Group,* 611 F.2d 296, 304 (9th Cir.1979). In this case, the service in question is directory assistance for telephone information. Much like "411," "555–1212" does not refer to a *particular provider* of directory assistance; rather it *is* directory assistance. While consumers may choose various phone companies to provide their long distance service or voice mail features, all phone users who want directory assistance typically either dial 411 or an area code followed by 555–1212. *See CD Solutions, Inc. v. Tooker,* 15 F.Supp.2d 986 (D.Or.1998) (courts may take judicial notice of the fact that a term is used commonly by the public); Fed.R.Evid. 201 (a fact may be judicially noticed when it is not subject to reasonable dispute). Thus, the Court finds 555–1212 to be understood as referring to the genus of non-local directory assistance.

A question is raised, however, when one adds a ".com" to a generic term. While no Circuit Court has specifically addressed this issue, the Ninth Circuit has held that "[t]he domain name is more than a mere address: like trademarks, *second-level domain names* communicate information as to source." *Brookfield,* 174 F.3d at 1055 (emphasis added). Second-level domain names are the words before the ".com". The ".com" is considered a top-level do-

main name. Thus, the Ninth Circuit has implied that the source identifying nature of a domain name, if any, lies in the characters which precede a ".com" not the ".com" itself. Following the Ninth Circuit's lead in *Brookfield,* one district court has held that generic top level domain names such as ".com" are not source identifying words and are therefore generic. *See Image Online Design, Inc. v. Core Ass'n,* 120 F.Supp.2d 870, 877 (C.D.Cal. 2000) (finding ".web" generic); *see also* 1 J. Thomas McCarthy, Trademarks and Unfair Competition, § 7:17.1 at 7–27 (4th ed. 1996 & Supp.2000) (taking the position that "the '.com' or other top level domain name adds nothing to the distinctiveness of the designation."); United States Department of Commerce, Patent and Trademark Office, Examination Guide No. 2–99, Marks Composed, in Whole or in Part, of Domain Names (Sept 29, 1999) (stating the PTO's policy declining to interpret a top-level domain as indicating source).

However, two generic terms may be combined to form a descriptive trademark. *See Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.,* 198 F.3d 1143, 1148 (9th Cir.1999). To determine that a combination of two generic terms is a composite generic term, courts must make a finding of genericness based upon a uniquely well-developed record. *Id.; Surgicenters,* 601 F.2d at 1017. (basing a genericness finding upon detailed information in some 45 exhibits that, taken collectively, suggested that the consuming public considered the composite term "surgicenter" to mean a surgical center generally speaking, as opposed to a surgical center maintained and operated by the plaintiff specifically). The burden of demonstrating genericness is on the defendant. As defendant has not presented any substantial evidence of what consumers perceive of 555–1212.com, the Court is

unable to make a finding of genericness. Therefore, the Court finds 555–1212.com merely descriptive.

### 4. *Whether the Mark has Acquired Secondary Meaning*

■ Having found plaintiff's mark to be descriptive, the burden shifts to plaintiff to prove that the mark has acquired secondary meaning. Factors to consider when determining the existence of secondary meaning include: (1) whether actual purchasers of the product bearing the claimed trademark associated the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether the use of the claimed trademark has been exclusive. *See Yost,* 92 F.3d at 822; *see also Carter–Wallace, Inc. v. Procter & Gamble Co.,* 434 F.2d 794, 802 (9th Cir. 1970) ("The test of secondary meaning is the effectiveness of the effort to create it, and the chief inquiry is directed toward the consumer's attitude about the mark in question: does it denote to him a single thing coming from a single source?").

### 2. *The Sutton and Perry Declarations*

In support of its argument for secondary meaning, plaintiff relies on the Sutton and Perry declarations. The Sutton declaration declares in relevant part two alleged facts: (1) that plaintiff's web site has been identified by Media Metrix, an industry research firm, as one of the top most contacted web sites in the world, and (2) that at some point counsel for defendant contacted Sutton and offered to sell him the 5551212.com website. The Perry Declaration offers only one piece of evidence in support of secondary meaning, a copy of a print-out of the Media Metrix web page listing 555–1212.com as one of the top 500 "Digital Media Properties that attract the most 'unique visitors' over the course of one month in a quarter." Perry Decl.Exh. A.

Neither of these declarations provide any admissible evidence in support of secondary meaning. The Media Metrix report only provides that a large number of Internet users visit plaintiff's web site. It does not provide any reasonable inference to conclude that these users perceive plaintiff's domain name as a brand name instead of a merely descriptive Internet address.

The other piece of evidence, Sutton's declaration regarding his conversation with opposing counsel to buy defendant's domain name, is inadmissible. The conversation in question was part of a settlement negotiation and therefore cannot be considered as evidence in opposition to summary judgment. *See* Fed.R.Evid. 408. Nor would any such conversation between the parties' attorneys be probative of consumer perception. Thus, the Court finds that plaintiff has not offered any admissible evidence to show (1) that actual users of its website associate the mark as the trade name of plaintiff's web site, (2) that plaintiff has advertised its mark, (3) the length and manner of use of the mark, or (4) whether use of the mark has been exclusive.

Defendant on the other hand has provided at least some evidence of non-exclusivity, i.e., 123 other domain names with the numbers "555" and "1212" in them and the AT & T 1–900 press release. *See* Polk Decl., Exh. A, B. Based on the record herein, the court finds that having been challenged by defendant on summary judgment to meet its burden of production for secondary meaning, plaintiff has failed to provide sufficient admissible evidence from which any reasonable jury could find in its favor. Therefore, summary judgment must be granted in favor of defendant.

B. *Plaintiff has Failed to Offer Sufficient Evidence that Defendant Uses its Domain Name in Commerce*

■ In addition, plaintiff has failed to demonstrate that defendant uses its domain name in commerce. In order to demonstrate infringement under the Lanham Act, a plaintiff must show that the defendant used the allegedly infringing mark "on or in connection with any goods or services ... *in commerce* [.]" 15 U.S.C. § 1125(a)(1) (emphasis added). Every court which has considered domain names in an infringement context, including some within the Ninth Circuit, has held that mere reservation of a domain name, without use in connection with any commercial enterprise, fails to trigger infringement by confusion under the Lanham Act. *See* McCarthy § 25:76; *Panavision Int'l L.P. v. Toeppen,* 945 F.Supp. 1296 (C.D.Cal.1996), *aff'd* 141 F.3d 1316 (9th Cir.1998); *Lockheed Martin Corp. v. Network Solutions Inc.,* 985 F.Supp. 949 (C.D.Cal.1997), *aff'd* 194 F.3d 980 (9th Cir. 1999), *HQM, Ltd. v. Hatfield,* 71 F.Supp.2d 500, 507 (D.Md.1999).

Here, plaintiff has failed to put forth any evidence in the record that defendant done anything more than merely reserve the domain name "5551212.com". The burden to show use in commerce is on the plaintiff; therefore, summary judgment must be granted in favor of defendant for this reason as well.

C. *Plaintiff has Failed to Offer Sufficient Evidence that Defendant's Use of Its Domain Name Causes a Likelihood of Confusion Among Relevant Consumers.*

■ Finally, plaintiff has also failed to meet its burden of production on infringement. In its papers, plaintiff argues that actual confusion is widespread and that defendant receives many inquiries to its domain name by persons who mistakenly believe that their inquiries to defendant are actually going to plaintiff. It also argues that there are no third parties who use similar marks to plaintiff's except for defendant. However, it has failed to present any evidence in the record to support these assertions. Neither the Sutton nor Perry declarations contain any facts from which plaintiff's conclusions can be inferred.

In addition, plaintiff has failed to offer any evidence to show (1) that defendant's goods are related to plaintiff's, i.e. that defendant uses the mark in connection with providing "databases featuring telephone and directory information accessible via electronic communication networks," the field of use for which plaintiff's mark issued; (2) that defendant intended to trade on plaintiff's mark, (3) simultaneous use of the Web by both parties as a marketing tool, (4) that there is a likelihood of expansion in product lines or (5) that purchasers use a degree of care that is likely to confuse them. *See Brookfield, supra; GoTo.com, supra.*

The Court finds of particular note the lack of any evidence that defendant has used the mark in a field related to plaintiff's registration and use. While famous marks are allowed to exclude similar marks in unrelated commercial channels, 15 U.S.C. § 1125(c), trademark infringement only provides protection in related fields. *See, e.g., Hasbro, Inc. v. Clue Computing, Inc.,* 66 F.Supp.2d 117, 122 (D.Mass.1999), *aff'd,* 232 F.3d 1 (1st Cir. 2000) (finding very little similarity between trademark owner's "Classic Detective Game" and defendant's computer consulting services for businesses on the Internet and therefore finding no likelihood of confusion regarding the domain name "clue.com"). Without sufficient admissible evidence of likelihood of confusion, plaintiff

cannot survive defendant's motion for summary judgment.

### III. CONCLUSION

For the forgoing reasons, the Court DENIES plaintiff's motion for summary judgment and GRANTS defendant's cross-motion for summary judgment.

IT IS SO ORDERED